UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABC CHILDREN'S DENTISTRY, LLC, | Civil Action No. 20-10044 |
| Plaintiff, | **OPINION** |
| v. | |
| THE HARTFORD INSURANCE COMPANY d/b/a THE SENTINEL INSURANCE COMPANY, LTD., | |
| Defendant. | |

**APPEARANCES**:

JOHN MORELLI
JACOBS SCHWALBE & PETRUZELLI PC
TEN MELROSE AVENUE – SUITE 340
CHERRY HILL, NJ 08003

    *Counsel on behalf of Plaintiff*

JAMES L. BROCHIN
STEPTOE & JOHNSON LLP
1114 AVENUE OF THE AMERICAS – 35TH FLOOR
NEW YORK, NY 10036

    *Counsel on behalf of Defendant*

**Hillman**, District Judge

This matter comes before the Court on Defendant Sentinel Insurance Company, Ltd.'s[1] ("Defendant") Motion for Judgment on the Pleadings. (ECF No. 22). For the reasons explained below, the Court will grant the motion.

---

[1] Defendant was improperly pleaded as The Hartford Insurance Company.

**BACKGROUND**

Plaintiff ABC Children's Dentistry, LLC ("Plaintiff") operates a dental practice in New Jersey. (ECF No. 15 ¶1.) To protect its business from potential loss, Plaintiff purchased an insurance policy from Defendant, who issued a Spectrum Business Owner's Policy bearing No. 40 SBA AB8719 for the period of October 24, 2019 to October 24, 2020 (the "Policy"). (Id. ¶8.)

The Policy's "Business Income" and "Civil Authority" provisions provide coverage for "actual loss of Business Income" due to the necessary suspension or forced closure of business operations. (ECF No. 22-2 at 37–38 §A.5.o, q.) However, the Policy also contains an exclusion for "loss or damage caused directly or indirectly" by the "[p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus," regardless of whether other causes or events "contribute[] concurrently or in any sequence to the loss" (the "Virus Exclusion"). (Id. at 99 §A.2.i.) The Virus Exclusion specifies it applies to and modifies all coverages in the "Special Property Coverage Form," including the "Business Income" and "Civil Authority" provisions. (Id. at 99.)

However, the Policy also provides an exception to the Virus Exclusion, specifying that its bar to coverage "does not apply: (1) When 'fungi', wet or dry rot, bacteria or virus results from fire or lighting; or (2) To the extent coverage is provided in

2

the Additional Coverage – Limited Coverage for 'Fungi', Wet Rot, Dry Rot, Bacteria and Virus [(the "Limited Virus Coverage Clause")] with respect to loss or damage by a cause of loss other than fire or lighting."  (Id. at 99 §A.2.i.)  The Limited Virus Coverage Clause is a carveout to the Virus Exclusion that provides up to $50,000 in coverage but "only applies when the . . . virus is the result of one or more of the following causes . . . (1) A 'specified cause of loss' other than fire or lightning; (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises."  (Id. at 99–100 §B.1.a.)  The Policy defines "specified cause of loss" as "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage."  (Id. at 52 §G.19.)

Plaintiff alleges that it suffered a covered loss under the Policy due to Governor Murphy's issuance of Executive Orders 107 and 109, which required "dental practices such as [its own] to cease business operations" in order to combat the spread of COVID-19.  (ECF No. 15 ¶6.)  Plaintiff filed an insurance claim with Defendant for its loss of income, but Defendant denied coverage.  (ECF No. 15 ¶15.)

3

On June 29, 2020, Plaintiff filed a civil action against Defendant in the Superior Court of New Jersey, Law Division, alleging a single claim for breach of contract. (ECF No. 1-1.) On August 5, 2020, Defendant removed the action to this Court. (ECF No. 1.) On October 17, 2020, Plaintiff filed an Amended Complaint, ECF No. 15, which Defendant answered on November 20, 2020. (ECF No. 21.) Then, on March 17, 2021, Defendant filed the present Motion for Judgment on the Pleadings, which largely relies on the Policy's Virus Exclusion in arguing that Plaintiff's Amended Complaint must be dismissed. (ECF No. 22.) Plaintiff filed a brief in opposition to the motion on April 2, 2021, arguing that the Policy does not unambiguously bar coverage, and that even if it does, the reasonable expectations doctrine should be applied to override the plain meaning of the Policy. (ECF No. 23.) Plaintiff also advances forward alternative arguments based on equitable estoppel and bad faith. (ECF No. 23 at 15-16.) Defendant responded with a brief in further support of its motion on April 19, 2021, and on April 21, 2021, Plaintiff followed with a letter brief in further opposition.[2] (ECF Nos. 27-28.) The motion is thus fully briefed and ripe for adjudication.

---

[2] Plaintiff failed to seek permission from the Court prior to filing its sur-reply in violation of Local Civil Rule 7.1. Nevertheless, even considering Plaintiff's improperly filed sur-

**DISCUSSION**

**A. Subject Matter Jurisdiction**

This Court exercises subject matter jurisdiction over this matter pursuant to 23 U.S.C. § 1332, because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

**B. Legal Standard of a Motion for Judgment on the Pleadings**

Fed. R. Civ. P. 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).

A district court must therefore accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff, Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005), however, it need not credit either "bald assertions" or "legal conclusions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[ ]."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 583

---

reply, the Court must grant Defendant's Motion for Judgment on the Pleadings.

5

(2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court must ask whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  It is ultimately the defendant, however, that bears the burden of showing that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  In addition, "on a motion for judgment on the pleadings," a court "reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings."  Perelman v. Perelman, 919 F. Supp. 2d 512, 520 n.2

6

(E.D. Pa. 2013).  The court may also consider "matters of public record[] as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195-96 (3d Cir. 2019) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  Here, Plaintiff's claims are based on the Policy, which is attached as an exhibit to Defendant's Motion for Judgment on the Pleadings.  Plaintiff does not dispute the authenticity of this document.  Accordingly, the Court will consider the Policy.

**C. Analysis**

As stated above, the Amended Complaint alleges a breach of contract claim based on Defendant's denial of coverage for Plaintiff's business income losses.  Plaintiff also advances arguments for equitable estoppel and bad faith.

This case comes on the heels of this Court's prior Opinion in Z Business Prototypes LLC v. Twin City Fire Insurance Co., No. 20-10075, 2021 WL 3486897 (D.N.J. August 9, 2021), in which the Court addressed similar breach of contract claims based on denial of insurance coverage for COVID-19 shutdown related losses.  In that case, this Court held that the virus exclusion in the parties' contract, which was identical to the one in the present case, clearly applied and barred coverage.  Id. at *3.

7

For substantially the same reasons, the Court reaches the same result here.

Both parties agree that New Jersey law applies. Under New Jersey law, the interpretation of an insurance policy is a "question of law." Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 46 A.3d 1272, 1276 (N.J. 2012). The language of an insurance policy "should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mutual Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992). "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured." Zacarias v. Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001). However, where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." Royal Ins. Co. v. Rutgers Cas. Ins. Co., 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994). The plain language of the policy, after all, is "the best indication of the parties' reasonable expectations." Causeway Automotive, LLC v. Zurich Am. Ins. Co., No. 20-8393, 2021 WL 486917, at *4 (D.N.J. Feb. 10, 2021). The court "should not write for the insured a better policy of insurance than the one purchased." Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004) (citing Vassiliu v. Daimler Chrysler Corp., 178 N.J. 286 (N.J. 2004)).

Under New Jersey law, "exclusions in [an] insurance policy should be narrowly construed." Nav-Its, Inc. v. Selective Ins. Co. of Am., 869 A.2d 929, 934 (N.J. 2005) (citing Princeton Ins. Co. v. Chunmuang, 698 A.2d 9, 16 (N.J. 1997)). "Nevertheless, if the exclusion is 'specific, plain, clear, prominent, and not contrary to public policy,' it will be enforced as written." Id. (citing Princeton Ins. Co., 698 A.2d at 17).

Plaintiff first argues that the Policy is ambiguous and that such ambiguity should be resolved in favor of its own reasonable expectations. (ECF No. 23 at 14.) According to Plaintiff, ambiguity exists because of "conflicts between the language of the Virus exclusion and the declaration page." (ECF No. 23 at 14.) In particular, Plaintiff asserts that the Policy's declaration section, through its incorporation of the Limited Virus Coverage Clause, appears to "provide coverage for COVID-19." (ECF No. 23 at 10.) Plaintiff points out that this declaration section does not mention the Virus Exclusion, but merely provides that it is subject to "all property limits found elsewhere in this declaration." (ECF No. 23 at 7.) Since the Virus Exclusion is not found "elsewhere" in the declaration section, but is instead "buried deep within the Policy," Plaintiff concludes that the Policy is ambiguous, even going so far as to claim that "no [comparable] case could be found." (ECF No. 23 at 14.) The Court disagrees.

As an initial matter, the structure of Defendant's Policy is not problematic. In Z Business Prototypes LLC, 2021 WL 3486897, at *5 and Arrowhead Health & Racquet Club, LLC v. Twin City Fire Insurance Co., No. 1:20-cv-08968-NLH-KMW, 2021 WL 2525739, at *6 (D.N.J. June 21, 2021), this Court analyzed the exact same exclusionary, limited coverage, and declaration provisions which are now at issue and concluded in both cases that "the Virus Exclusion clearly and unambiguously bar[red] all coverage." And while contractual structure was not expressly at issue in those cases, it is well settled that "an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented." Zacarias, 775 A.2d 1262, 1270 (N.J. 2001); see also Canopius US Ins. Inc. v. Graham Trucking, LLC, No. 17-4616, 2018 WL 1757028, at *8 (D.N.J April 12, 2018) ("[T]he fact that [an] Exclusion is not expressly listed within [a] Declarations Sheet does not render [a] Policy ambiguous."). Rather, it is sufficient for a declaration section to "alert[] the insured that the coverages and limits of liability are subject to [other] provisions of the policy" through internal cross-reference, Zacarias, 775 A.2d at 1269; see also Canopius, 2018 WL 1757028, at *8 (finding it significant that an "Exclusion [was] cross-referenced in the Declarations Sheet" because it "alert[ed] the insured that coverage [was] limited by that

10

provision of the Policy"), especially when "the exclusion itself is written in direct and ordinary terms."[3] Zacarias, 775 A.2d at 1269.

In this case, the Virus Exclusion is cross-referenced in the declarations section,[4] thereby alerting Plaintiff that coverage is limited by that provision of the Policy.[5] The Virus Exclusion itself is also "written in direct and ordinary terms." Id.

As this Court previously noted in Delaware Valley Plumbing Supply, Inc. v. Merchants Mutual Insurance Co., No. 1:20-cv-08257-NLH-KMW, 2021 WL 567994, at *4 (D.N.J. Feb. 16, 2021), throughout the current COVID-19 pandemic "a significant number of courts, both in this Circuit and across the country, have

---

[3] Plaintiff relies on Lehrhoff v. Aetna Cas. and Sur. Co., 638 A.2d 889, 892 (N.J. Sup. Ct. App. Div. 1994) for the proposition that declaration pages have a "significant importance" in defining the reasonable expectations of an insured. (ECF No. 28 at 1.)  As the New Jersey Supreme Court clarified in Zacarias, however, an insured must allege more than a structural separation of policy provisions in order to establish an ambiguity.  Zacarias, 775 A.2d at 1269-70.

[4] Specifically, the declaration section provides the following: "Form Numbers of Forms and Endorsements that apply . . . Form SS 40 93 07 05 . . . ."  ECF No. 22-2 at 19; See also Canopius, 2018 WL 1757028, at *8 n.4 (finding the structure of a policy unambiguous based on a similar cross-reference).

[5] More generally, the declaration section also states that "[t]his Spectrum Policy consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy." ECF No. 22-2 at 13.

analyzed virus exclusion clauses that were either identical or highly similar to the one in Plaintiff's Policy, and consistently" held that such clauses barred coverage for insurance claims related to loss or damages caused by the widespread government shut down orders issued in response to COVID-19. This Court then cited to a significant number of cases, both within this Circuit and without, that had reached that exact conclusion. See id. (citing cases).

Four months later, in Arrowhead, which involved an identical virus exclusion to the one at issue here, the Court recognized that the "trend ha[d] continued" and highlighted that in the months since Delaware Valley Plumbing was issued "two courts in this district ha[d] held that the exact virus exclusion clause found in the policy [at issue] . . . bar[red] coverage for insurance claims like those put forth by Plaintiffs." Arrowhead, 2021 WL 2525739, at *3 (citing Stern & Eisenberg, P.C. v. Sentinel Ins. Co., No. 20-11277, 2021 WL 1422860 (D.N.J. Apr. 14, 2021); Podiatry Foot & Ankle Inst. P.A. v. Hartford Ins. Co. of the Midwest, No. 20-20057, 2021 WL 1326975 (D.N.J. Apr. 9, 2021)). This Court further noted that "numerous courts in this district have addressed essentially identical claims based on virus exclusion clauses with similar language, and have repeatedly made the same finding." Id. (citing cases).

12

Then, less than two months after Arrowhead, this Court considered Z Business Prototypes, a case which also involved an identical virus exclusion to the one at issue here. Z Business Prototypes, 2021 WL 3486897, at *1.  Again, this Court noted that the "trend ha[d] continued," identifying "three more courts in [the] district that ha[d] held that virus exclusion clauses that were either identical or similar . . . bar[red] coverage for insurance claims like Plaintiff's." Id. at *4 (citing Sweetberry Holdings LLC v. Twin City Fire Ins. Co., No. 20-08200, 2021 WL 3030269 (D.N.J July 19, 2021); Metuchen Ctr. v. Liberty Mut. Ins. Co., No. 20-12584, 2021 WL 3206827 (D.N.J. July 29, 2021); T&L Catering, Inc. v. Hanover Ins. Grp., Inc., No. 20-07934, 2021 WL 2948425 (D.N.J. July 14, 2021)).

Unsurprisingly, in the month since Z Business Prototypes was decided, the trend has again continued, with three more courts in this district holding that virus exclusion clauses, either identical or similar to the one at issue here, bar coverage for insurance claims like Plaintiff's.  See Salon Dare, Inc. v. Sentinel Ins. Co., No. 20-9616, 2021 WL 3472648, at *2 (D.N.J. Aug. 6, 2021) ("[T]he Court again reaches the same conclusion and finds that the Virus Exclusion clearly and unambiguously bars coverage."); JRJ Hospitality, Inc. v. Twin City Fire Ins. Co., No. 20-13095, 2021 WL 3561356, at *5 (D.N.J. Aug. 12, 2021)("[T]he Policies do not cover any claim for losses

13

caused by the COVID-19 virus and the ensuing Executive Orders."); Beniak Enterprises, Inc. v. Indemnity Ins. Co. of N. Am., No. 20-5536, 2021 WL 3783257, at *7 (D.N.J. Aug. 26, 2021)("[T]he virus exclusion bars [Plaintiff's] claims for loss sustained due to the Closure Orders.").

Here, the Court can discern no reason to depart from the long line of cases within this district that have found identical or similar virus exclusion clauses to be written in direct and ordinary terms.[6]  Thus, the structure of the Policy, with its related cross-references, is unambiguous.  Plaintiff's argument that the Virus Exclusion does not comport with its "reasonable expectations" is therefore irrelevant, as this Court, in the absence of exceptional circumstances, only

---

[6] Plaintiff relies on a single federal court opinion, Urogynecology Specialist of Florida LLC v. Sentinel Insurance Co., 489 F.Supp.3d 1297 (M.D. Fla. Sept. 24, 2020), to argue that "denying coverage for losses stemming from COVID-19 does not logically align with the grouping of the virus exclusion." (ECF No. 23 at 15).  The Court is unpersuaded by this argument. First, although Urogynecology concluded that a similar virus exclusion did not necessarily exclude coverage, that holding was largely premised on the court not possessing "the corresponding forms which [were] modified by the exclusions." Id. at 1302. In contrast, here, the Court possesses the entire Policy.  And besides the factual distinctions, this Court has already considered the merits of Urogynecology's interpretative reasoning and concluded that "it agrees with the series of other courts in this Circuit which have [held that] the language of the Virus Exclusion . . . rather than containing fatal ambiguities, 'is explicit and plainly excludes [COVID-19 related] coverage.'" Arrowhead, 2021 WL 2525739, at *5 (quoting Stern & Eisenberg, 2021 WL 1422860, at *5).

14

considers reasonable expectations "[w]hen there is ambiguity." Zacarias, 775 A.2d at 1264. To consider Plaintiff's reasonable expectation where "no such genuine ambiguity exists . . . could result in the Court 'writ[ing] for the insured a better policy of insurance than the one purchased.'" Body Physics v. Nationwide Ins., No. 20-9231, 2021 WL 912815, at *6 (D.N.J. Mar. 10, 2021) (quoting Zacarias, 775 A.2d at 1264).

Even with no ambiguities present, however, Plaintiff maintains that the reasonable expectations doctrine should be applied. It points out that in "exceptional circumstances," such as when "text appears overly technical[,] contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend," courts are permitted to "vindicate the insured's reasonable expectations over [a] policy's literal meaning." (ECF No. 23 at 13 (quoting Abboud v. Nat. Union Fire Ins. Co. of Pittsburgh, 163 A.3d 353, 359 (N.J. Super. Ct. App. Div. 2017))). Here, Plaintiff argues that the "unprecedented global pandemic" supports "a finding of exceptional circumstances permitting coverage in contravention of the policy's plain language." (ECF No. 23 at 14). The Court disagrees.

As shown above, for the large number of courts in this district that have already analyzed identical or similar virus

15

exclusions, the global pandemic did not provide reason to override unambiguous policy language. See, e.g., Body Physics, 2021 WL 912815, at *6 ("[T]he Virus Exclusion is unambiguous and it excludes Plaintiff's alleged losses, which were unfortunately caused by COVID-19, a virus that has affected too many businesses and individuals."). And as we have seen, no other "exceptional circumstances" are present. The Policy's language is plain, not "overly technical," and its structure, while employing internal cross-references, does not contain "hidden pitfalls." Abboud, 163 A.3d at 359 (quoting Zacarias, 775 A.2d at 1268). Accordingly, the Court finds that there is no reason to override the Virus Exclusion's unambiguous language. As such, the Policy's Business Income, Civil Authority, and Limited Virus Coverage clauses do not provide coverage for Plaintiff's COVID-19 related losses.[7]

Plaintiff next asserts that Defendant should be "estopped from asserting the inapplicability of insurance . . . despite a clear contractual provision excluding the claim from coverage." (ECF No. 23 at 16). While New Jersey courts sometimes use

---

[7] In its briefing, Plaintiff also argues that the Policy's "Hazardous Substance" provision covers its COVID-19 related losses. However, the "Hazardous Substance" provision, like the "Business Income" and "Civil Authority" provisions, is part of the "Special Property Coverage Form," which is explicitly modified by the Virus Exclusion. (ECF No. 22-2 at 99). This alleged coverage is therefore excluded as well.

16

equitable estoppel "to bring within insurance coverage risks or perils which are not provided for in the policy or which are expressly excluded," the doctrine is only available in "appropriate circumstances." Harr v. Allstate Ins. Co., 255 A.2d 208, 219 (N.J. 1969).

> In order to establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Additionally, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment. The burden of proof of a claim based on principles of equitable estoppel is on the party asserting estoppel.

Brown v. Hartford Group, No. 08-3160, 2009 WL 467846, at *3 (D.N.J. Feb. 23, 2009) (internal citations and quotations omitted); see also Owens v. American Hardware Mut. Ins. Co., No. 11-6663, 2013 WL 6903940, at *8 (D.N.J Dec. 30, 2013) ("[T]he basic principle of the equitable estoppel doctrine [is] that a party must have suffered some prejudice after reasonably relying upon another party's representations.").

   Here, the Court can find no evidence of misrepresentation regarding the Policy's coverage.  Plaintiff alleges misrepresentation because "coverage appeared to be available" on the "face" of the Policy.  (ECF No. 23 at 16).  Assuming for the moment that such a finding would establish misrepresentation, the allegation is still unfounded and indeed circular.  As stated above, the Policy unambiguously bars, not grants,

17

coverage. Thus, Plaintiff's equitable estoppel claim must fail. See, e.g., Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 292 n.6 (3d Cir. 2004) (rejecting a claim based on equitable estoppel because there was "no evidence of misrepresentation regarding the coverage of [the] insurance policy").

Plaintiff finally asserts that Defendant "failed to act in good faith" by denying coverage. (ECF No. 23 at 16). The Court first notes that Plaintiff initially raised this argument in a short discussion at the end of its opposition brief. (ECF No. 23 at 16). Plaintiff did not bring such a claim in this action and may not amend its Amended Complaint now in opposition to Defendant's Motion for Judgment on the Pleadings. Olson v. Ako, 724 Fed App'x 160, 166 (3d Cir. Mar. 20, 2018 (quoting Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); see also Ross v. Hayt, Hayt & Landau, LLC, No. 15-1506, 2015 2015 WL 8781307, at *3 n.2 (D.N.J. Dec. 14, 2015) (citing Zimmerman, 836 F.2d at 181)("Plaintiff cannot use an opposition brief to supplement his complaint."). Regardless, the Court finds that even if Plaintiff pleaded a bad faith claim, Plaintiff's Amended Complaint would still not survive dismissal.

"In order to state a claim for bad faith denial of insurance coverage, a plaintiff must allege the following: (1)

18

the insurer lacked a reasonable basis for denying benefits, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." Shore Options Inc. v. Great Am. Ins. Grp., No. 20-03835, 2020 WL 5627211, at *16 (D.N.J. Sept. 21, 2020) (citing Pickett v. Lloyd's, 621 A.2d 445, 454 (1993)).  "However, if a claim is fairly debatable, no liability in tort will arise."  Id. (quoting Pickett, 621 A.2d at 453) (internal citation and quotation omitted).  "Moreover, there can be no bad faith claim for denial of coverage if the insurer was correct as a matter of law in denying coverage." Id. (citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999)); see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 435 (3d Cir. 2007) (same).  However, "if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives."  Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co., 513 F.Supp.3d 549, 564 (quoting Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 598 (E.D. Pa. 2012); see also Gallatin Fuels, 244 F. App'x at 435 (analyzing the plaintiff's bad faith claim because it was "based largely on behavior beyond . . . denial of the claim," such as misrepresenting the terms of the policy, delaying investigation of the claim, and hiding information from the insured).

19

Here, Plaintiff's bad faith claim is based on Defendant's denial of coverage, but as detailed above, that denial of coverage was proper as a matter of law.  Accordingly, a bad faith claim based on these facts would not survive dismissal. Z Bus. Prototypes LLC, 2021 WL 3486897, at *6 (dismissing with prejudice plaintiff's bad faith claim based on denial of coverage where the virus exclusion applied and barred coverage).

As a final matter, Plaintiff contends that it should be granted leave to amend its Amended Complaint in order to "include [an] allegation that it reasonably relied upon the [Policy's] declaration pages."  (ECF No. 23 at 17).  The Court, however, has already found that the Policy's plain language is controlling, not Plaintiff's reasonable expectations.  Amendment would therefore be futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (listing "futility of amendment" as a basis for not granting leave to amend).

## CONCLUSION

For the reasons stated above, the Court will grant Defendant's Motion for Judgment on the Pleadings.

An appropriate Order will be entered.


Date: September 21, 2021           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.